## IN THE SUPREME COURT OF MISSISSIPPI
### NO. 2000-CA-01354-SCT

*DEBRA SANDERS AND STATE OF MISSISSIPPI*

*v.*

*ESTATE OF BUTCH CHAMBLEE*

| | |
|---|---|
| DATE OF JUDGMENT: | 07/18/2000 |
| TRIAL JUDGE: | HON. GRAY EVANS |
| COURT FROM WHICH APPEALED: | LEFLORE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: RICKEY T. MOORE |
| ATTORNEY FOR APPELLEE: | LEE ABRAHAM, JR. |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | REVERSED AND REMANDED-06/20/2002 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 7/11/2002 |

**EN BANC.**

**COBB, JUSTICE, FOR THE COURT:**

¶1. On July 18, 2000, the Leflore County Circuit Court entered a permanent injunction against Debra Sanders, the Leflore County Medical Examiner, preventing her (or anyone else) from performing an autopsy on the body of Butch Chamblee or drawing bodily fluids from him in order to determine the cause of his death. The injunction was sought by Chamblee's widow. Sanders and the State appeal the ruling, raising the following issues:

> **I. WHETHER THE CIRCUIT COURT HAD JURISDICTION?**
>
> **II. WHETHER THE CIRCUIT COURT ERRED OR ABUSED ITS DISCRETION BY ORDERING THAT AN AUTOPSY NOT BE DONE ON THE BODY OF BUTCH CHAMBLEE?**
>
> **III. WHETHER THE CIRCUIT COURT ERRED OR ABUSED ITS DISCRETION BY ORDERING THAT NO BODILY FLUIDS WERE TO BE DRAWN FROM THE BODY OF BUTCH CHAMBLEE?**

¶2. We conclude that the circuit court did err, and we reverse and remand.

### FACTS

¶3. On July 17, 2000, a vehicle driven by Butch Chamblee collided with a train at a railroad crossing in Greenwood, Mississippi. Chamblee was pronounced dead on arrival at the Greenwood Leflore Hospital. Debra Sanders, the Leflore County Coroner, arrived soon thereafter and visually inspected the body.

Although Sanders determined that Chamblee had apparently only suffered a fractured arm and fractured pelvis, she was unable to determine whether Chamblee's death was caused by the collision or by some other cause, such as a fatal heart attack. She requested that an autopsy should be performed pursuant to the provisions of Miss. Code Ann. § 41-61-65 (2001). Chamblee's family objected and secured a temporary restraining order to prevent the autopsy, which was later amended into a final order barring the autopsy and forbidding even the drawing of fluids from the body.

## STANDARD OF REVIEW

¶4. Statutory interpretation is a question of law, and this Court reviews questions of law de novo. *Roberts v. New Albany Separate Sch. Dist.*, 813 So.2d 729, 730-31 (Miss. 2002); *Carrington v. Methodist Med. Ctr., Inc.,* 740 So.2d 827, 829 (Miss. 1999).

## DISCUSSION

¶5. The Estate did not file an appellee's brief on appeal to this Court. As this Court has stated, "Failure of an appellee to file a brief is tantamount to confession of error and will be accepted as such unless the reviewing court can say with confidence, after considering the record and brief of appealing party, that there was no error." *Dethlefs v. Beau Maison Dev. Corp.*, 458 So.2d 714, 717 (Miss. 1984). "Where the appellant's brief makes out an apparent case of error . . . , we do not regard it as our obligation to look to the record to find a way to avoid the force of the appellants' argument. *Id.*

¶6. Although the record before us consists of only 30 pages of clerk's papers and a trial transcript only 21 pages long, it is thoroughly briefed by the appellant with a clear statement of the facts, and with apt and applicable citation of authorities, and makes out an apparent case of error. This Court could accept the failure to file a brief as a confession of error, and reverse without looking to the record. However, because this case involves an issue affecting the public interest, we choose to review the case on the merits found in the record.

### I. WHETHER THE CIRCUIT COURT HAD JURISDICTION?

¶7. The State asserts that under the plain language of the statute, the circuit court lacked jurisdiction to even hear the case because the estate failed to exhaust administrative remedies by first appealing to the State Medical Examiner for further review, pursuant to § 41-61-65(3):

> (3) Family members or others who disagree with the medical examiner's determination **shall be able to petition and present written argument to the State Medical Examiner for further review. If the petitioner still disagrees, he may petition the circuit court** which may, in its discretion, hold a formal hearing. All cost of the petitioning and hearing shall be borne by the petitioner.

Miss. Code Ann. § 41-61-65(3) (2001)(emphasis added). In support of its argument, the State cites a number of cases for the general proposition that administrative review and appeal provisions of state statutes must be followed before judicial remedies are available. However, when confronted by similar facts in *Hopson v. Meredith*, 719 So.2d 1176, 1177 (Miss. 1998), we upheld the trial court's assertion of jurisdiction.

¶8. While the plain language of the statute appears to support the State's position, we do not believe that the Legislature intended that a deceased person's burial be delayed indefinitely while his next-of-kin pursues

administrative hearings with a state agency in Jackson. We also note that a leading commentator states that "[o]ne need not exhaust administrative remedies that are inadequate" and considers many factors both pro and con which aid a reviewing court in determining whether the administrative remedy should be followed. 4 Kenneth Culp Davis, Administrative Law Treatise § 26:5, at 832 (2d ed. 1983). Among these factors which might justify a "pulling away" from the requirement of exhaustion is one which seems particularly applicable in a situation such as the one before us: the "expense and awkwardness of the administrative proceeding as compared with inexpensive and efficient judicial disposition of the controversy." *Id.* § 26:1, at 414-15. *See also **Miss. Dep't of Envtl. Quality v. Weems,*** 653 So.2d 266, 277-78 (Miss. 1995).

¶9. In the case sub judice, the death occurred at an unspecified time on July 17, 2000, and the decedent's family naturally desired to proceed in a timely manner with a proper funeral and burial. The circuit judge was available to hear and reach an expedited judgment. He entered the temporary restraining order was entered at 9:38 p.m. that same day, and he heard arguments at 2:30 p.m. the next day. At that hearing, the trial judge heard testimony from the county coroner and argument of counsel for each side, and met with a representative of the family, the coroner, and attorneys for both, for an off-the-record discussion. Following that meeting, the trial judge granted the permanent injunction prohibiting the drawing of bodily fluids and the autopsy. We conclude that the facts of this case permitted the trial court to take immediate jurisdiction over the case without the exhaustion of administrative remedies.

### II. WHETHER THE CIRCUIT COURT ERRED OR ABUSED ITS DISCRETION BY ORDERING THAT AN AUTOPSY NOT BE DONE ON THE BODY OF BUTCH CHAMBLEE?

¶10. The State asserts that an autopsy was required in this case, as a matter of law, because it involved a "death affecting the public interest," which is defined as follows:

A death affecting the public interest includes, but is not limited to, any of the following:

(a) Violent death, including homicidal, suicidal or accidental death.

Miss. Code Ann. § 41-61-59(2) (2001). In addition, Miss. Code Ann. § 41-61-53(e) (2001). defines a death affecting the public interest as being "any death of a human being where the circumstances are sudden, violent, suspicious or unattended." Finally, the statute specifically leaves the decision as to whether an autopsy should be made to the discretion of the medical examiner investigating the case and the State Medical Examiner. Miss. Code Ann. § 41-61-65 provides:

(1) If, in the opinion of the medical examiner investigating the case, it is advisable and in the public interest that an autopsy or other study be made for the purpose of determining the primary and/or contributing cause of death, an autopsy or other study shall be made by the State Medical Examiner . . ..

Miss. Code Ann. § 41-61-65(1) (2001).

¶11. In ***Hopson v. Meredith***, 719 So.2d 1176 (Miss. 1998), the decedent's next-of-kin sought injunctive relief to prevent an autopsy being performed on the decedent's body, contending that the county medical examiner should not be allowed unfettered discretion in ordering autopsies. The trial court concluded that it lacked authority to grant the relief requested by the family. We affirmed, noting that "[v]iolent death, including homicide, suicidal or accidental death" are statutorily defined as affecting the public interest such

that a coroner's decision to order an autopsy is proper. *Hopson*, 719 So.2d at 1178 (quoting Miss. Code Ann. § 41-61-59(2)(a)). We agree with the State that *Hopson* is controlling and conclude that the circuit court erred in denying the autopsy.

### III. WHETHER THE CIRCUIT COURT ERRED OR ABUSED ITS DISCRETION BY ORDERING THAT NO BODILY FLUIDS WERE TO BE DRAWN FROM THE BODY OF BUTCH CHAMBLEE?

¶12. The State also challenges the injunction barring the taking of bodily fluids from the decedent. The statute requires the medical examiner to "obtain or attempt to obtain postmortem blood, urine and/or vitreous fluids" whenever he decides not to perform an autopsy in a death affecting the public interest. Miss. Code Ann. § 41-61-63(2)(d) (2001). At the hearing before the trial court, the Estate argued that the taking of such fluids was unconstitutional, stating:

> The law is [*McDuff v. State*] which strikes down Section 63-22-8 as being unconstitutional unless there is probable cause for the drawing of bodily fluids. I do not know of anybody that's here that can testify as to any probable cause. If it's necessary, the sheriff's office is here to testify concerning probable cause, but I know of no proof concerning probable cause in the estate. . . .

The trial court accepted the Estate's reasoning and concluded that the taking of blood from the decedent was barred as unconstitutional.

¶13. The argument offered by the Estate before the trial court clearly misrepresented the holding of *McDuff v. State*, 763 So.2d 850 (Miss. 2000). There, we held that a warrantless blood test performed without probable cause on a person suspected of driving while intoxicated violated both the Fourth Amendment of the U.S. Constitution and Article 3, § 23 of the Mississippi Constitution. *Id.* at 855 (striking down Miss. Code Ann. § 63-11-8). As the State points out, the statute implicated in *McDuff* -- § 63-11-8, which authorized mandatory blood testing from a suspected DUI -- is completely different from § 41-61-63. In this case, the only purpose for taking the bodily fluids was to help determine the cause of death. There was no prosecutorial purpose mentioned. The record is devoid of any conceivable postmortem privacy interest the decedent could have which outweighs the public interest in determining the circumstances surrounding an accidental death.

¶14. And now having addressed the legal arguments and answered the legal questions raised on this appeal, we provide additional guidance to the trial court below and to others who might find themselves in a similar situation in the future. We are not unmindful of the possibility that an untrained and overeager medical examiner might arbitrarily demand autopsies in unwarranted cases, over the objections of a decedent's family. However, we expect that county medical examiners will use their authority in a sensitive and professional manner. Further, any concerns about abuse of the medical examiner's authority are not only buffered by the State Medical Examiner and the circuit court, but also are outweighed by the possibility of giving a decedent's family a veto power over medical examiners in the performance of their statutorily mandated job. In the absence of an autopsy or the taking of bodily fluids in the present case, the State had no way of knowing whether Chamblee simply had a heart attack as he was approaching the railroad crossing, or whether there was a possibility of foul play. The State has a legitimate interest in answering the questions raised by Chamblee's death or by the death of any person which falls under the rubric of violent death.

¶15. This Court, in considering the practical consequences of our decision, reaches the following conclusion. Because nearly two years have passed since this case was decided by the trial court, whatever public interest existed then for determining the cause of death may no longer exist. It surely has eroded with time. Further, we are no longer dealing with a body lying in a morgue, but instead, a body lying in a grave. The public interest of determining the cause of death must now be further weighed against the right of the family to have their loved one's final resting place left undisturbed, and the costs to the county associated with exhuming a body.[1]

¶16. For these reasons, we reverse and remand the order of the circuit court. On remand, the circuit court, after a hearing, is to determine whether it is **presently** advisable and in the public interest that an autopsy or drawing of fluids be performed, taking into consideration not only the trauma to the family, and the costs of exhumation which the county will have to bear, but all other matters it finds pertinent. Only if the circuit court finds that the public interest will best be served in performing an autopsy or drawing fluids, will such be ordered to go forward.

## CONCLUSION

¶17. We reverse the judgment of the Leflore County Circuit Court and remand for further proceedings consistent with this opinion.

¶18. **REVERSED AND REMANDED.**

**SMITH, P.J., WALLER, DIAZ, EASLEY AND CARLSON, JJ., CONCUR. McRAE, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION. GRAVES, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. PITTMAN, C.J., NOT PARTICIPATING.**

**McRAE, PRESIDING JUSTICE, DISSENTING:**

¶19. This is a case in which competing interests, the rights of the public versus the private rights of family members, collide. From the facts of this case, the trial court judge got it right in siding with the family's interest. There is no question that the State is allowed to order an autopsy to determine if there has been a crime committed, or if there is some overriding compelling public reason, for example, to gain knowledge of or to prevent the spreading of an infectious disease. However, a simple car-train collision presents no apparent compelling public interest. The trial court did not abuse its discretion, and I would affirm its holding. Accordingly, I dissent.

¶20. The medical examiner arrived on the scene of the train crash, made a visual inspection of the body and determined that Chamblee had only suffered a fractured arm and pelvis. She was unable to determine whether Chamblee's death was caused by the collision or some other cause, such as a fatal heart attack, so she requested that an autopsy be performed. She gave no compelling reason or probable cause to invade the family's right to not have an autopsy. The record indicates that there was no foul play suspected and no major diseases or other public concerns at issue. The coroner simply requested an autopsy to determine, in her mind, what caused Chamblee's death, and that is not a sufficient reason to order an autopsy against the family's right to privacy.

¶21. This case exemplifies when it is proper for a court to permit a coroner's order for an autopsy over the objections of the decedent's family. If the State had given valid reasons for the autopsy to be performed, the court should have ordered the autopsy. However, when the State offers no overriding public interest to

trump the objections of the family, then the State should not be allowed to go forward with an autopsy.

¶22. I agree that the medical examiner may proceed under Miss. Code Ann. § 41-61-63 (2001). However, there has been no showing, nor is there any attempt to show, that there existed any underlying foul play, major disease, or that a catastrophe had or might have occurred. Therefore, I would affirm the trial court. Accordingly, I dissent.

1. *See* Miss. Code Ann. § 41-61-67(1) (2001)("The cost of exhumation, autopsy, transportation and disposition of the body shall be paid by the county for which the service is provided.").