ROBERTS, J.,
dissenting:
¶ 16. I must respectfully dissent from the majority’s conclusion that the case before us is without error and can be safely affirmed with confidence. The majority finds that there is sufficient evidence to affirm each of Lobo’s convictions and that the Circuit Court of Madison County committed no error in allowing the City of Ridgeland to file an appellate brief in the circuit court, far outside the circuit-court ordered deadline and after the circuit court had entered an order reversing the convictions. However, I conclude that this case presents troublesome questions regarding the City’s failure to follow Rule 2 of the Mississippi Rules of Appellate Procedure before the circuit court. In addition, I have genuine concerns with each of Lobo’s convictions such that, I believe, we cannot safely affirm this matter with confidence. In my considered opinion, the circuit court should have reversed Lobo’s convictions after the City failed to comply with the circuit court’s order mandating the filing of an appellee’s brief within fourteen days of November 10, 2011, or suffer a reversal of the convictions. Accordingly, I would reverse and render Lobo’s convictions.
¶ 17. A brief review of the relevant facts is appropriate. On August 9, 2009, Officer Alex Pierce, of the Ridgeland Police Department, stopped Lobo for careless driving and running a red light. During this stop, Officer Pierce detected “the odor of an intoxicating beverage” coming from Lobo’s vehicle. Officer Pierce called for assistance from Officer Webb, a DUI *154 trained officer, to address her suspicions that Lobo was under the influence of alcohol. Officer Webb arrived on the scene and administered a series of field-sobriety tests on Lobo and asked Lobo to take a portable breath test. Lobo declined his request. Based on these events, Officer Webb took Lobo into custody on suspicion of driving under the influence of alcohol. Upon arrival at the Ridgeland Police Department, Officer Webb asked Lobo if he would submit to the Intoxilyzer 8000 test, but Lobo again declined. Lobo was eventually charged with first-offense DUI, careless driving, and running a red light.
¶ 18. After a non-jury bench trial at the county court level, Lobo appealed his convictions on all three counts to the circuit court on July 28, 2010. After three agreed orders granting an extension of time in which to file an appellate brief, Lobo filed his brief with the circuit court on January 4, 2011. The City was likewise granted an extension of time in which to file an appellate brief; the deadline for submission being April 15, 2011. The record is then silent until October 6, 2011, when the circuit court sua sponte entered an order requiring the City to file an appellate brief by November 8, 2011. No brief was filed by this date. On November 10, 2011, the circuit court again sua sponte entered an order regarding notice of the City’s deficiency. The circuit court required the City to correct its deficiency within fourteen days. If the deficiency was not corrected within that time period, the circuit judge ordered that “this cause shall be dismissed and any conviction shall be reversed.” (Emphasis added). In addition, the November 10, 2011 order stated that the circuit court would not consider further extensions of time. No brief was filed within the fourteen-day period.
¶ 19. The circuit court entered another sua sponte order on December 29, 2011, for the City to show cause for its failure to comply with the its November 10, 2011 order or face potential sanctions, and found that the City had failed to file its appellee’s brief after the fourteen-day period. Because the City still ignored the circuit court’s order, the court entered another show-cause order on January 20, 2012, finding that Boty McDonald, attorney for the City, failed to comply with the rules of the circuit court and was required to file an appellee’s brief for the City by January 31, 2012, or demonstrate why he should not be sanctioned. On January 31, 2012, the deadline day, the City finally filed an appellee’s brief in circuit court. Lobo then filed a motion on Februaiy 10, 2012, to strike the appellee’s brief as untimely filed. Finally, the circuit court entered a judgment on February 24, 2012, denying Lobo’s motion to strike the City’s brief, affirming the convictions, and remanding the case back to the county court for execution of the judgment of that court.
¶ 20. Lobo filed his appeal to the Mississippi Supreme Court on March 29, 2012. McDonald filed with this Court his entry of appearance as counsel for the City on May 23, 2012. Lobo filed his appellant’s brief on August 9, 2012. The City’s brief was due thirty days later. No brief was filed. This Court’s clerk notified the City’s counsel of the deficiency and gave fourteen-days’ notice to correct it. The notice was ignored. No brief has been filed to date. Consequently, it is necessary to discuss the standard of review where no ap-pellee’s brief exists.
¶ 21. The majority cites In re Estate of Dabney, 69 So.3d 71 (Miss.Ct.App.2011), as the standard on how this Court should review the appellee’s failure to file an appellate brief. However, Dabney is a civil chancery court matter. I believe the more analogous and appropriate standard comes *155 from Chatman v. State, 761 So.2d 851 (Miss.2000). In Chatman, the supreme court addressed circumstances in which the government failed to file a brief incident to a criminal appeal. According to the supreme court:
The State failed to file a timely brief in this appeal. An appellee’s failure to file a brief on appeal is tantamount to confession of the errors alleged by the appellant. However, automatic reversal is not required if this Court can say with confidence that the case should be affirmed.
Id. at 854 (¶ 9) (internal citations and quotation marks omitted). I believe that this standard of analysis is the more appropriate and applicable one to the case before us, as it addresses the rare and peculiar instance where the government fails to file an appellate brief in a criminal matter.
1122. The majority also cites Sanders v. Chamblee, 819 So.2d 1275, 1277 (¶ 6) (Miss. 2002), stating that because the case before us involves an issue of public interest, this Court should review it despite the appel-lee’s failure to file a brief. This characterization of Lobo’s misdemeanors as matters involving substantial public interest is misplaced. Sanders dealt with the statutory interpretation of an autopsy statute, which required the supreme court to determine whether a medical examiner had the authority to order an autopsy against the wishes of the family when the particular type of death affected the public interest. Id., at 1278 (¶¶ 10-11). While it may be correctly stated that all criminal prosecutions involve some degree of a public interest, the extent of the public interest does vary with the subject matter of the specific charges as well as the parties involved. When compared to homicides, forcible rapes, armed robberies, or other especially heinous or violent crimes, a misdemeanor first-offense DUI and two traffic offenses seem hardly in the category of a criminal matter that merits automatic review based on some perceived heightened public interest. Furthermore, the statutory interpretations for DUI offenses are well settled, unlike the issue of first impression present in Sanders.
¶ 28. Upon applying the Chatman standard to the case before us, this case merits automatic reversal due to the numerous errors present, and the fact that I cannot say with confidence that the matter can be safely affirmed.
¶ 24. The first issue is a procedural bar, which renders this matter improperly before this Court. Under Rule 12.03(D) of the Uniform Rules of Circuit and County Court Practice, the time in which to file an appellate brief in an appeal from county court to circuit court is governed by Rule 31 of the Mississippi Rules of Appellate Procedure. Since the City failed to comply with the circuit court’s orders regarding the submission of a brief under Rule 31, the circuit court issued the November 10, 2011 sua sponte order invoking Rules 2 and 31 of the Mississippi Rules of Appellate Procedure.
¶ 25. The November 10, 2011 order stated, in part:
[Tjhere has been an obvious failure to defend against the appeal and a failure to comply substantially with the Mississippi Rules of Appellate Procedure, either of which warrants this cause being dismissed and any conviction of the appellant that is the subject of this appeal being reversed.... [I]f [the City] fails to file a brief within fourteen (14) days after notification of such deficiency[,] this cause shall be dismissed and any conviction of the appellant that is the subject of the appeal shall be reversed.
(Emphasis added). The record shows the City’s counsel received the fourteen-day deficiency notice and did nothing. It was *156 only after the threat of sanctions, two more sua sponte orders, and over two months having passed that the City filed its brief on January 31, 2012. That clearly fell outside the fourteen-day deadline required to correct a deficiency under Rule 2(a)(2), which the circuit court had issued to the City.
¶ 26. On November 24, 2011, fourteen days after the November 10, 2011 order, Lobo’s convictions stood reversed and the matter should have been rendered. It was not. After issuing the notice of deficiency to the City, the circuit court allowed the City to submit a brief without stating whether the circuit court intended to suspend the requirements of Rule 2(a)(2) under Mississippi Rule of Appellate Procedure 2(c). The circuit court never indicated that it intended to suspend Rule 2(a)(2). Rule 2(a)(2) states: “The attorney for the party in default has the burden to correct promptly any deficiency or see that the default is corrected by the appropriate official. Motions for additional time in which to file briefs will not be entertained after the notice of the deficiency has issued.” The circuit court merely appears to have changed its mind without finding any “interest of expediting decision, or for other good cause” required by Rule 2(c) to suspend the rules.
¶ 27. Given the absence of any justification for these two errors, I believe this case is not properly before this Court, as it was effectively reversed and rendered on November 24, 2011, by the circuit court’s own order.
¶ 28. Notwithstanding these significant procedural issues, I have several reservations concerning the evidence presented regarding Lobo’s convictions. As the majority states, Lobo was convicted of first-offense DUI, careless driving, and running a red light.
¶ 29. I shall first discuss the running-the-red-light conviction. Lobo argues that he proceeded through the red light in an effort to yield to an emergency vehicle, Officer Pierce’s patrol car. Lobo testified at trial that:
I was slowing down to a red light. If I — I don’t remember if I came to a complete stop, but I was coming to a stop. There — I noticed a cop — the blue lights flashing behind me. I — it was at a red light. I thought the blue lights had precedence over the red light, so I made sure the intersection was safe, and I pulled forward until I found the next safe spot to pull over with a wide enough shoulder.
Lobo continues on to testify that he first noticed the patrol car behind him in front of a fast-food restaurant located immediately before the red light. Officer Pierce corroborated Lobo’s testimony during the following exchange:
Q. You’ve just testified that the SUV ran the red light. Explain specifically how you observed the SUV running the red light. Where were you located at the time?
A. Right behind the SUV.
Q. About how many car lengths, you think, behind?
A. Maybe one car length.
Q. All right. At what point — where was the SUV located when the light turned red?
A. In the right lane of westbound County Line.
Q. And in relation to the traffic light itself, how close to the traffic light was the SUV when the light turned red?
A. He — the SUV was not over the line yet before the light turned red.
Officer Pierce further testified that Lobo pulled his SUV over to the nearest shoul *157 der after he crossed through the intersection.
¶ 30. Lobo contends that pursuant to Mississippi Code Annotated section 63-3-809(1) (Rev.2004), he was yielding to an approaching emergency vehicle, which required him to proceed through a red light in order to yield the right-of-way. Section 63-3-809(1) states in part:
Upon the immediate approach of an authorized emergency vehicle, when the driver is giving audible signal by siren, exhaust whistle, or bell, the driver of every other vehicle shall yield the right-of-way and shall immediately drive to a position parallel to, and as close as possible to, the right-hand edge or curb of the roadway clear of any intersection and shall stop and remain in such position until the authorized emergency vehicle has passed....
Lobo further contends that despite Officer Pierce not activating her siren, he was still required to yield the right-of-way pursuant to Mississippi Code Annotated section 63-7-19 (Rev.2004). Section 63-7-19 states, in part:
[A]s provided in Section 63-3-809[,][o]nly police vehicles used for emergency work may be marked with blinking, oscillating or rotating blue lights to warn other vehicles to yield the right-of-way.
Lobo correctly notes that, “[w]hile ... section [63-3-809(1) ] does not require a driver to yield to an emergency vehicle using only his blue lights, the Legislature filled this gap with the passage of [section] 63-7-19 of the Mississippi Code....” Andrews v. Jitney Jungle Stores of Am., Inc., 537 So.2d 447, 449 (Miss.1989).
¶ 31. I find this particular argument well taken. The City has filed no response to Lobo’s argument, and certainly not demonstrated any evidence sufficient to warrant affirming Lobo’s conviction for running a red light. In fact, to affirm the conviction under these circumstances would create a situation in which drivers must break one law (failing to yield to an emergency vehicle) to follow another one (stopping for a red light).
¶ 32. As for the careless driving and first-offense DUI convictions, I detect a situation where a “swearing match” exists between Lobo and the City. Obviously, at the bench trial, the City’s burden was to prove Lobo guilty beyond a reasonable doubt. Based on the evidence presented in the record, it appears that the City and Lobo occupy relatively equal positions. Each presents a plausible story. To that end, it is necessary to examine the specific testimony offered before the county court judge.
¶ 33. At trial Officer Pierce testified to the following concerning the careless-driving charge:
Q. All right. So, again, what specifically, if anything, did you observe that automobile do?
A. I observed it run over the concrete divider on County Line.
[[Image here]]
Q. And so what are you saying happened?
A. His whole vehicle, all four tires, ran over the concrete divider.
Q. And you don’t have a video of this at all, do you?
A. There should be video.
[[Image here]]
Q. Okay. Did you — have you ever looked at your video to see if a video exists in this case?
A. No, I haven’t.
Q. So you’re sort of testifying from memory, correct?
A. Yes.
*158 The record contains no video of this incident. By comparison, Lobo testified:
Q. Okay. Tell us what happened that evening concerning the arrest.
A. Basically I was parked at the intersection of Ridgeland (sic) and County Line Road. I had a red light. It turned green. I hung a left. I went down to the intersection and hung a left. As — when I made the left, after I passed the first car, there were— there were cars parked obviously going eastbound on County Line Road. I made a left onto the — onto County Line Road, and then I clipped the median with a tire, not all — not all four tires. The median is recessed actually about 15 feet back from the stop bar where the first car was parked on County Line Road, so that’s why I didn’t see it when — when I proceeded to make the left. The median is very hard to see because it was 15 feet back behind the first car....
Officer Pierce’s testimony was that there exists a concrete lane divider in the middle of County Line Road near the intersection, which is about three inches high, one foot wide, and about thirty feet long. Lobo was stopped around 2:30 a.m., which is clearly nighttime. Lobo further testified that he was not a resident of the Ridge-land area; he was only here on work-related business, and had only traveled through this area once before. That was why he was not familiar with the roadways around the area of County Line Road and Ridgewood Road.
¶ 34. As the majority notes, Lobo was convicted of careless driving under Mississippi Code Annotated section 63-3-1213 (Rev.2004). Section 63-3-1213 states, in part, that “[a]ny person who drives a vehicle in a careless or imprudent manner ... is guilty of careless driving.” While Lobo does not attack the statute on vagueness grounds, he claims that no evidence exists that his bumping over a three-inch-high lane divider, with one tire, while making his turn in the intersection created any hazard to himself or other motorists.
¶ 35. As for the DUI conviction, Officer Webb, the DUI enforcement officer on the scene, testified that Lobo’s speech was slurred and his eyes were bloodshot. Furthermore, he administered the standard field-sobriety tests on Lobo, which gave indications that Lobo was under impairment. The majority notes all these facts along with the fact that Lobo twice declined to submit to a chemical test, such as the portable breath test or Intoxilyzer 8000. As a result, Lobo was charged with first-offense DUI pursuant to Mississippi Code Annotated section 63-ll-30(l)(a) (Rev.2004), which prohibits driving a vehicle while under the influence of intoxicating liquors. Such a charge has been referred to as “common-law DUI.” Lobo, by comparison, testified that his speech was not slurred, nor was he impaired to the point that he could not safely operate a motor vehicle. Lobo testified that he had eaten his dinner meal around 8:30 p.m. to 9:00 p.m. that night and then met a friend at the “Bulldog” restaurant on Ridgewood Road. He testified he had three drinks of vodka and water; one at 10:00 p.m., another around 11:00 p.m., and a final one around 12:00 a.m. As mentioned previously, the stop occurred at 2:30 a.m. In addition, Lobo points to the two videos entered into evidence by the City as demonstrating his lack of any impairment.
¶ 36. The first video is the dashboard camera from Officer Webb’s patrol car, taken at the arrest scene. Due to the position of Officer Webb’s patrol car relative to where the tests were administered, this video does not show Officer Webb administering the field-sobriety tests nor *159 Lobo’s performance on these various tests. The only information from this video regarding the field-sobriety tests comes from the audio portion of the recording and is hardly dispositive of Lobo’s intoxication or lack thereof. This video does show Lobo being escorted to Officer Webb’s patrol car in handcuffs and being transported to the Ridgeland Police Department; however, this too is hardly dispositive that he was under the influence of alcohol. The second video depicts the waiting room for the Intoxilyzer 8000 at the Ridgeland Police Department while Lobo was under observation prior to Officer Webb’s request to administer the Intoxilyzer test. This second video depicts Lobo sitting upright in a backless, rotating stool without any outward or obvious signs of impairment. These videos, particularly the second, do lend a significant amount of credence to Lobo’s assertion that he was not too impaired to safely operate a motor vehicle. Simply stated, the videos do not show any obvious indication that Lobo was under the influence of intoxicating liquors.
¶ 37. Section 63-ll-30(l)(a) was enacted during a time when blood chemistry evidence was unavailable to law enforcement and allowed officers to charge an individual with driving under the influence based on their inability to safely operate an automobile. At trial, the City made a number of assertions that Lobo was too impaired to safely operate a motor vehicle, while Lobo, obviously, contested those assertions. What is problematic about Lobo’s DUI conviction is the fact that there is no clear indication of Lobo’s impairment, much less whether any such impairment materially affected his ability to safely operate a motor vehicle. In essence it was another swearing match. And we have no brief from the City responding to Lobo’s claims.
¶ 38. Another matter of concern warrants discussion. The present procedural posture of this case places this Court in a delicate position relative to the proper role of the judiciary. By affirming Lobo’s convictions as valid, when the City voluntarily chooses not to defend their validity, we, at least in my opinion, come perilously close to becoming an advocate for the prosecution. Lobo’s two-day suspended jail sentence and two-year probationary period have now expired, and it appears that the only remaining issue is his payment of the $1,075 fine, court costs, and assessments. By failing to file an appellee’s brief, the City may well have deliberately decided to abandon the prosecution of Lobo.[1] Other states, when confronted with such a conundrum, have determined that the government has abandoned its prosecution of the defendant or treated the government’s actions as grounds for a pro forma reversal. See 5 Am.Jur.2d Appellate Review § 538 (1995); see also State v. Files, 183 Conn. 586, 441 A.2d 27, 29-30 (Conn.1981) (motion to remand for new trial granted based on prosecution’s lack of due diligence in defending a criminal appeal); People v. Keeney, 96 Ill.App.2d 323, 238 N.E.2d 614, 615 (1968) (government’s failure to file an appellee’s brief places the court in an abhorrent role of both advocate and judge such that reversal may be warranted); People v. Spinelli, 83 Ill.App.2d 391, 227 N.E.2d 779, 779 (1967) (government’s failure to file an appellee’s brief resulted in *160 pro forma reversal); Com. v. Paasche, 391 Mass. 18, 459 N.E.2d 1223, 1224-25 (1984) (government’s failure to file an appellee’s brief in a criminal case could indicate a failure to prosecute). The City’s default in handling this appeal begs the question as to whether it desires to prosecute this case or has abandoned its prosecution. Such a serious and unanswered question places this Court in a judicial dilemma, where we may be affirming convictions that the City of Ridgeland no longer desires to prosecute.
¶ 39. Due to the numerous procedural and substantive issues within this case, I cannot say that Lobo’s convictions can safely be affirmed with confidence under the Chatman standard. Furthermore, I believe this case was effectively reversed and rendered by the circuit court on November 24, 2011. As such, I would reverse and render all three of Lobo’s convictions. Because the majority affirms, I must respectfully dissent.
LEE, C.J., ISHEE AND FAIR, JJ„ JOIN THIS OPINION.

. I take judicial notice of this Court's own docket. It reflects there are three similar cases presently pending in this Court. In each one, the City’s attorney, McDonald, failed to timely file an appellee's brief with the circuit court. In addition, in each of these appeals, McDonald again failed to file an appellee’s brief with this Court. They are Lobo v. City of Ridgeland, 2012-KM-00525-COA; Drabicki v. City of Ridgeland, 2012-KM-00528-COA; and Carlson v. City of Ridgeland, 2012-KM-01091-COA.