# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-CA-01244-COA

JAMES WILSON                                                                                    APPELLANT

v.

PEARLEAN DAVIS                                                                                    APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 07/01/2013 |
| TRIAL JUDGE: | HON. PATRICIA D. WISE |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | FELECIA PERKINS |
| | JESSICA NICOLE AYERS |
| ATTORNEY FOR APPELLEE: | PEARLEAN DAVIS (PRO SE) |
| NATURE OF THE CASE: | CIVIL - CUSTODY |
| TRIAL COURT DISPOSITION: | PRIMARY CUSTODY OF MINOR CHILD AWARDED TO APPELLEE; VISITATION AWARDED TO APPELLANT; JOINT LEGAL CUSTODY AWARDED TO APPELLANT AND APPELLEE |
| DISPOSITION: | AFFIRMED: 11/18/2014 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**GRIFFIS, P.J., FOR THE COURT:**

¶1.     This case involves a child-custody dispute between the child's natural father and the maternal grandmother.  The chancellor found that the natural-parent presumption had been rebutted and that it was in the best interest of the child to live with her grandmother.  We find no error and affirm.

## FACTS

¶2.     Concetter Davis was the mother of two children.  Ka'Nyla ("Ka") was born in 2001.

Sha'Nyla M. Wilson ("Sha") was born on April 20, 2003.

¶3.     This action began as a paternity and custody dispute between Concetter and James Wilson. James was adjudged to be Sha's natural father. Concetter was awarded custody, and James was awarded visitation.

¶4.     Concetter died in 2011. When Concetter's relatives would not return Sha to James, he filed a petition for modification and sought sole legal and physical custody of Sha. The chancellor entered an order that awarded the primary physical custody of Sha to Pearlean Davis, Sha's maternal grandmother. The chancellor also awarded James liberal visitation.

¶5.     In the decision, the chancellor did not treat the issue as an initial custody dispute between a natural parent and grandparent. Instead, the chancellor considered the motion as a modification of child custody based on the prior custody determination between Concetter and James.

¶6.     The judgment was appealed and assigned to this Court. We reversed the judgment and remanded the case for the chancellor to make a determination of whether the natural-parent presumption had been rebutted. *See Wilson v. Davis*, 111 So. 3d 1280, 1283 (¶11) (Miss. Ct. App. 2013). On remand, the chancellor found that the natural-parent presumption had been overcome and applied an *Albright*[1] analysis. The chancellor entered a judgment that ruled it was in Sha's best interest to remain in Pearlean's custody. James appeals the chancellor's judgment.

STANDARD OF REVIEW

[1] *Albright v. Albright*, 437 So. 2d 1003, 1005 (Miss. 1983).

¶7.    In child-custody cases, this Court will reverse the chancellor's judgment only if the findings are manifestly wrong or clearly erroneous, or an improper legal standard was applied. *Mabus v. Mabus*, 847 So. 2d 815, 818 (¶8) (Miss. 2003).

ANALYSIS

¶8.    We begin our review by noting that the appellee did not file a brief in this case. The Mississippi Supreme Court has ruled that the "[f]ailure of an appellee to file a brief is tantamount to a confession of error and will be accepted as such unless the reviewing court can say with confidence, after considering the record and brief of the appealing party, that there was no error." *Sanders v. Chamblee*, 819 So. 2d 1275, 1277 (¶5) (Miss. 2002). We have reviewed the record and the appellant's brief, and we can say with confidence that the chancellor did not commit error. Therefore, we do not consider the appellee's failure to file a brief a confession of error.

    I.    *Whether the natural-parent presumption was rebutted.*

¶9.    In a child-custody determination between a natural parent and a third party, Mississippi law presumes that it is in the best interest of the child for the natural parent to have custody. *Lucas v. Hendrix*, 92 So. 3d 699, 705-06 (¶17) (Miss. Ct. App. 2012) . This is because "[g]randparents have no legal right [to] custody of a grandchild, as against a natural parent." *Lorenz v. Strait*, 987 So. 2d 427, 434 (¶41) (Miss. 2008).

¶10.    In *Smith v. Smith*, 97 So. 3d 43, 46 (¶9) (Miss. 2012), the Mississippi Supreme Court held that "[t]he natural-parent presumption can be rebutted by a clear showing that (1) the parent has abandoned the child; (2) the parent has deserted the child; (3) the parent's conduct is so immoral as to be detrimental to the child; or (4) the parent is unfit, mentally or

3

otherwise, to have custody." The court has also ruled:

> In a custody case involving a natural parent and a third party, the court must first determine whether through abandonment, desertion, or other acts demonstrating unfitness to raise a child, as shown by clear and convincing evidence, the natural parent has relinquished his right to claim the benefit of the natural-parent presumption. If the court finds one of these factors has been proven, then the presumption vanishes, and the court must go further to determine custody based on the best interests of the child through an on-the-record analysis of the *Albright* factors.

*In re Dissolution of Marriage of Leverock & Hamby*, 23 So. 3d 424, 431 (¶24) (Miss. 2009).

¶11. Here, the chancellor found abandonment and immoral conduct. The chancellor did not find that James deserted Sha or was unfit. James challenges these findings.

¶12. First, James argues that the evidence did not support the finding that he abandoned Sha. James points to the fact that he filed a complaint, in 2007, for an order of filiation to confirm and assert his role as Sha's biological father. Based on this earlier action, the chancellor found that James was Sha's father and granted him visitation rights.

¶13. In *Ethredge v. Yawn*, 605 So. 2d 761, 764 (Miss. 1992), the court defined abandonment as:

> Any course of conduct on the part of a parent evincing a settled purpose to forgo all duties and relinquish all parental claims to the child. It may result from a single decision by a parent at a particular point in time. It may arise from a course of circumstances. The test is an objective one: whether under the totality of the circumstances, be they single or multiple, the natural parent has manifested his severance of all ties with the child.

(Citing *Bryant v. Cameron*, 473 So. 2d 174, 178-79 (Miss. 1985)). Here, the chancellor found:

> [James] took no interest in the minor when she was born. Undisputed testimony reflects that the baby and Mother actually went home from the hospital with a man named Sylvester Crump. He is the father of Concetter's

4

daughter, Ka. When Concetter went into labor[,] Crump took her to the hospital. Further, [James] played no role in the birth, pregnancy or delivery of Sha. Additionally, and undisputed, [Pearlean] testified that [James] showed, at particular points in time, no interest in the child's life and that it took three years before he actually got involved. [James] stated to the Guardian ad Litem ("GAL"), Attorney Debra M. Giles, that he has always been in [Sha]'s life, but the facts do not support this assertion. Even now, the minor child reports that she considers Crump her dad and only calls [James] dad when she is in his presence. While balancing both the testimony and [James]'s statement to the GAL, the [c]ourt is convinced that at different stages of the child's early years, [James] clearly abandoned [Sha] and for[sook] his parental responsibilities.

¶14. The evidence at trial established that James is involved in Sha's life. He visits her at school and participates in activities, such as birthday parties. James attends parent-teacher conferences and talks with Sha's teachers. James certainly takes an active role in Sha's life. Hence, the chancellor's finding that James has abandoned Sha is not supported by substantial evidence.

¶15. Next, we consider the chancellor's finding that James's conduct was so immoral that he was unfit to have custody. The chancellor found that James's past and present relationships have negatively influenced his ability to properly parent Sha. The chancellor stated:

> The point that the court is making in regards to [James]'s past and present relationships is that: (1) [James] consistently dates and marries wom[e]n much younger than him whom he relies on solely to cook, clean and care for him; [and] (2) [James] has consistently had overlapping relationships with these younger women.

¶16. The chancellor also addressed James's current home environment. James's wife, Annette Wilson, is the mother of three children. Two of these children have anger problems. At trial, Annette testified that the boys see a therapist because of their anger. The chancellor found that neither Annette nor James appreciates the seriousness of the boys' anger and that

5

they lack awareness of or concern for the potential danger Sha could be exposed to. Further, the chancellor found that because James and Annette have only been married one year, Sha and Annette share no "real bond."

¶17. The chancellor addressed the family dynamic prior to and after Concetter's death. At one point, Annette and Concetter got into a physical altercation. Because Annette is a homemaker, Sha would have to rely on Annette solely for all of her needs while James is at work. Because of this, the chancellor found that if Sha lived with James, the situation could be detrimental to her.

¶18. The evidence clearly indicated that James has had multiple extramarital affairs. When James met Concetter, he was still married. James and Concetter lived together between 2005 and 2006. Sometime after 2006, James met another woman and married her, and they divorced in 2009. Prior to this divorce, James met and started to date Annette.

¶19. Although we have determined that the evidence did not support the finding that James had abandoned Sha, we find that there was sufficient evidence to support the chancellor's finding that James's conduct is so immoral that he is unfit to have custody. *See Smith*, 97 So. 3d at 46 (¶9). Accordingly, we find that the chancellor was correct to hold that the natural-parent presumption was rebutted.

> II. *Whether the chancellor erred in the* Albright *analysis.*

¶20. Because we have found "one of these factors has been proven, then the presumption vanishes, and the court must go further to determine custody based on the best interests of the child through an on-the-record analysis of the *Albright* factors." *In re Dissolution of Marriage of Leverock & Hamby*, 23 So. 3d at 431 (¶24).

6

¶21.    In child-custody cases, "the polestar consideration is in the best interest of the child." *Sellers v. Sellers*, 638 So. 2d 481, 485 (Miss. 1994).  In *Albright v. Albright*, 437 So. 2d 1003, 1005 (Miss. 1983), the court set forth the factors to be considered by the chancellor to determine child custody:

> [A]ge of the child; health [ ] and sex of the child; a determination of the parent that has had the continuity of care prior to the separation; which has the best parenting skills and which has the willingness and capacity to provide primary child care; the employment of the parent and responsibilities of that employment; physical and mental health and age of the parents; emotional ties of parent and child; moral fitness of parents; the home, school and community record of the child; the preference of the child at the age sufficient to express a preference by law; stability of home environment and employment of each parent[;] and other factors relevant to the parent-child relationship.

¶22.    Here, the chancellor conducted an *Albright* analysis.  After considering each factor, the chancellor determined that it was in Sha's best interest to remain in Pearlean's primary physical custody.  James argues that the chancellor erred in this analysis.  He contends that the majority of the factors favor him rather than Pearlean.  Pearlean failed to file a reply brief on appeal.

¶23.    The chancellor found that the following factors favored Pearlean: age, health, and sex of the child; continuity of care prior to the separation; best parenting skills; emotional ties of parent and child; moral fitness of the parents; home, school, and community record of the child; and stability of the home environment.  The chancellor found that the only factor that favored James was the "employment of the parent" factor.  The chancellor found that the "physical and mental health and age of the parents" factor equally favored both parties.  Also, while the chancellor found that Sha's preference was to live with Pearlean, we will not consider this factor because Sha was not of the legal age for her preference to be considered.

7

*See* Miss. Code Ann. § 93-11-65 (Rev. 2013).

¶24. The chancellor made several findings that influenced the decision. Sha had been in Concetter's physical custody throughout her life. Pearlean had helped Concetter support and raise Sha. Although James and Pearlean were willing to provide primary child care, Pearlean has the ability to devote her entire life and time to raise Sha. Pearlean has significant parenting skills because she has raised other children, including Ka. Sha has a much closer bond with Pearlean than with James. Pearlean can provide an overall better quality of life and home environment for Sha. Sha told the guardian ad litem that she does not like going to visit James.

¶25. Our review of the record indicates that there was substantial evidence to support the chancellor's analysis of the *Albright* factors. Our role is to determine whether there was an evidentiary basis to support the chancellor's findings. Having done so, we cannot find the chancellor erred in her *Albright* analysis. We affirm the chancellor's judgment that awarded primary custody of Sha to Pearlean.

¶26. **THE JUDGMENT OF THE CHANCERY COURT OF HINDS COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., ISHEE, CARLTON, MAXWELL AND FAIR, JJ., CONCUR. BARNES AND JAMES, JJ., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. ROBERTS, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY IRVING, P.J.**

**ROBERTS, J., DISSENTING:**

¶27. As the majority correctly notes, Pearlean failed to file an appellee's brief in this case. And the "failure of an appellee to file a brief is tantamount to a confession of error and will

8

be accepted as such unless the reviewing court can say with confidence, after considering the record and brief of the [appellant,] that there was no error." *Sanders v. Chamblee*, 819 So. 2d 1275, 1277 (¶5) (Miss. 2002). Because I cannot say with confidence that the chancery court committed no error, I take Pearlean's failure to file a brief as a confession of error. I respectfully dissent from the majority's determination that an appropriate evidentiary basis exists to support the chancery court's award of primary custody to Pearlean. Instead, I would reverse the chancery court's award of primary custody to Pearlean, render a judgment awarding James primary custody of his daughter Sha, and remand for the chancery court to determine appropriate grandparent visitation for Pearlean.

¶28.	Mississippi law mandates a presumption that it is in the best interest of the child for a natural parent to retain custody over a third party. However, there are four ways for a third party to rebut the natural-parent presumption. *See Davis v. Vaughn*, 126 So. 3d 33, 36-37 (¶10) (Miss. 2013). The third party must show, by clear and convincing evidence, that "(1) the parent has abandoned the child; (2) the parent has deserted the child; (3) the parent's conduct is so immoral as to be detrimental to the child; or (4) the parent is unfit, mentally or otherwise, to have custody." *Id.*

> Clear and convincing evidence "produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable the fact-finder to come to a clear conviction, without hesitancy, of the truth of the precise facts of the case."

*Parra v. Parra*, 65 So. 3d 872, 878 (¶17) (Miss. Ct. App. 2011) (quoting *Niebanck v. Block*, 35 So. 3d 1260, 1264 (¶10) (Miss. Ct. App. 2010)). Additionally, it is well settled that "[g]randparents have no legal right [to] custody of a grandchild, as against a natural parent."

9

*Lorenz v. Strait*, 987 So. 2d 427, 434 (¶41) (Miss. 2008).

¶29. This is not the first instance that this Court has reviewed this case. Following Concetter's death, James immediately filed a petition for custody of his daughter. *Wilson v. Davis*, 111 So. 3d 1280, 1281-82 (¶4) (Miss. Ct. App. 2013). The chancery court, applying an incorrect legal standard, awarded Pearlean custody of Sha, even after noting James's "genuine fatherly love for [his] daughter[.]" *Id.* at 1282 (¶5). In 2013, this Court found that the chancery court improperly considered the proceedings a custody modification instead of a custody determination between a natural parent and a grandparent, and we remanded the case to chancery court for it to determine whether the natural-parent presumption had been rebutted by clear and convincing evidence. *Id.* at 1282-83 (¶¶10-11).

¶30. Upon remand, the chancery court did not hold a new hearing or take new evidence in the matter. It modified its original opinion and found that the natural-parent presumption had been overcome because James had abandoned Sha and he had engaged in immoral conduct; it then applied an *Albright* analysis; and it found that Pearlean should retain custody of Sha because it was in Sha's best interest.

¶31. I take issue with the chancery court's finding that the natural-parent presumption had been overcome, by clear and convincing evidence, based on James's abandonment of Sha and his immoral conduct. The majority states, in paragraph eight: "We have reviewed the record and the appellant's brief, and we can say with confidence that the chancellor did not commit error." Yet the majority later determines the chancery court erred in its finding that James abandoned Sha. The majority concludes, in paragraph fourteen, that the chancery court's "finding that [James] has abandoned Sha is not supported by substantial evidence."

10

I wholeheartedly agree.

¶32. In addition, I submit that the chancery court also erred in finding that James's conduct was so immoral that it would be detrimental to Sha for him to have custody of her. In support of its finding that James's conduct was immoral, the chancery court cited to James's relationships to suggest that his propensity to date younger women and commit adultery would influence his ability to parent Sha. This is the primary example relied upon to demonstrate James's immorality and unfitness to parent Sha. James has been married a total of three times: the first for twenty-five years, a second for approximately four years, and finally to his current wife since 2011. There is no indication that James and his current wife have separated or divorced since the initial hearing in this case. I cannot find that the chancery court's reliance on this evidence is clear and convincing evidence of immorality and unfitness such that the natural-parent presumption should be overcome.

¶33. The chancery court cited to several other examples of problems with awarding James custody; however, these other examples, mainly involving animosity between the families and extended family, are more suited for an *Albright* analysis with little or no impact on James's morality or fitness. For example, the chancery court found that the home environment with James would be dangerous to Sha based on James's stepson's anger issues, and that James lacks "awareness or . . concern . . . [for] the potential danger [Sha] could be exposed [to]" based on the anger problem. But, as the chancery court acknowledged, the stepson's anger issues have not been violent or directed at Sha, and the stepson is receiving counseling for his anger issue. Again, I cannot see how a stepson's mental-health issues affect James's morality or fitness to parent Sha. The chancery court also stated that Sha has

11

experienced numerous "disruptive patterns of behavior" based on the animosity between Concetter, James, and their families, including James's current wife, who fought with Concetter prior to Concetter's death. And there was concern that James's current wife might not properly care for Sha; however, there is no evidence in the record to support this concern. While it is true that there has been much animosity between family members since Sha's birth, this, in and of itself, is not sufficient to show that James, himself, was immoral or unfit to parent Sha.

¶34. Further, I cannot reconcile the chancery court's finding that James was so immoral and unfit to parent Sha that the natural-parent presumption was overcome, while at the same time awarding him joint legal custody and liberal visitation with Sha, including extended weekend, summer, spring-break, and holiday visitation. Moreover, the chancery court adopted the recommendation in the GAL's report that Pearlean retain custody of Sha, but ignored the GAL's statement that: "Clearly, case law favors [James] having custody of [Sha]."

¶35. For the above reasons, I submit that the chancery court erred in finding that the natural-parent presumption had been rebutted. Simply stated, there was no clear and convincing evidence of James's immorality or unfitness to parent Sha. Therefore, I would reverse the chancery court 's judgment and render a judgment awarding James custody of his daughter Sha. Since Pearlean intervened in James's petition for custody and requested to be awarded grandparent-visitation rights after the death of her daughter Concetter, I would remand this matter to the chancery court for it to determine appropriate grandparent visitation for Pearlean.

12

**IRVING, P.J., JOINS THIS OPINION.**