GRIFFIS, P.J.,
for the Court:
¶ 1. This case involves a child-custody dispute between the child’s natural father and the maternal grandmother. The chancellor found that the natural-parent presumption had been rebutted and that it was in the best interest of the child to live with her grandmother. We find no error and affirm.
FACTS
¶ 2. Concetter Davis was the mother of two children. KalNyla (“Ka”) was born in 2001. Sha’Nyla M., Wilson (“Sha”), was born on April 20,2003.
"¶3. This action began as a paternity and custody dispute between Concetter and James Wilson. James was adjudged to be Sha’s natural father. Concetter was awarded custody, and James was awarded visitation.
¶ 4. Concetter died in 2011. When Concetter’s relatives would not return Sha to James, he filed a petition for modification "and sought sole legal and physical custody of Sha. The chancellor entered an order that awarded the primary physical custody of Sha to Pearlean Davis, Sha’s maternal grandmother. The- chancellor also awarded James liberal visitation.
¶ 5. In the decision, the chancellor did not treat the issue as an initial custody dispute between a natural parent and grandparent. Instead, the chancellor considered the motion as a modification of child custody based on the prior custody determination between Concetter and James.
¶6. The judgment was appealed and assigned to this Court. We reversed the judgment and remanded the case for the chancellor to make a determination of whether the natural-parent presumption had been rebutted. See Wilson v. Davis, 111 So.3d 1280, 1283 (¶ 11) (Miss.Ct.App. *1013 2013). On remand, the chancellor found that the natural-parent presumption had been overcome and applied an Albright[1] analysis. The chancellor entered a judgment that ruled it was in Sha’s best .interest to. remain in Pearlean’s custody. James appeals the chancellor’s judgment.
STANDARD OF REVIEW
¶ 7. In child-custody cases, this Court will reverse the chancellor’s judgment only if the findings are manifestly wrong or clearly erroneous, or an improper legal standard was applied. Mabus v. Mabus, 847 So.2d 815, 818 (¶ 8) (Miss.2003).
ANALYSIS
¶ 8. We begin our review by noting that the appellee did not file a brief in this case. The Mississippi Supreme Court has ruled that the “[fjailure of an appellee to file a brief is tantamount to a confession of error and will be accepted as such unless the reviewing court can say with confidence, after considering the record and brief of the appealing party, that there was no error.” Sanders v. Chamblee, 819 So.2d 1275, 1277 (¶ 5) (Miss.2002). We have reviewed the record and the appellant’s brief, and we can say with confidence that the chancellor did not commit error. Therefore, we do not consider the appel-lee’s failure to file a brief a confession of error.

I. Whether the natural-parent presumption was rebutted,

¶ 9. In a child-custody determination between a natural parent and a third party, Mississippi law presumes that it is in the best interest of the child for the natural parent to have custody. Lucas v. Hendrix, 92 So.3d 699, 705-06 (¶ 17) (Miss.Ct.App.2012). This, is because “[grandparents have no legal right [to] custody of a grandchild, as against a natural parent.” Lorenz v. Strait, 987 So.2d 427, 434 (¶ 41) (Miss.2008).
¶ 10. In Smith v. Smith, 97 So.3d 43, 46 (¶ 9) (Miss.2012), the Mississippi .Supreme, Court held that “[t]he natural-parent presumption can be rebutted by a clear showing that (1) the parent has abandoned the child; (2) the parent has deserted the child; (3) the, parent’s, conduct is so immoral as to be detrimental to.the child; or (4) the parent is unfit, mentally or otherwise, to have custody.” The court has also ruled:
In a custody case involving a natural parent and a third party, the court must first determine whether through abandonment, desertion, or other acts demonstrating unfitness to raise a child, as shown by clear and convincing evidence, the natural parent has relinquished his right to claim the benefit of the natural-parent presumption. If the. court finds one of these factors has, been proven, then the presumption vanishes, and the court must go further to determine custody based on the best interests of the child through an on-the-record analysis of the Albright factors.
In re Dissolution of Marriage of Leverock & Hamby, 23 So.3d 424, 431 (¶ 24) (Miss.2009).
¶ 11. Here, the chancellor found abandonment and immoral conduct. The chancellor did not find that James deserted Sha or was unfit. James challenges these findings.
¶ 12. First, James argues that the evidence did not support the finding that he abandoned Sha. Janies points to the fact that he filed a complaint, in 2007, for an order of filiation to confirm and assert *1014 his role as Sha’s biological father. Based on this earlier action, the chancellor found that James was Sha’s father and granted him visitation rights.
¶ 13. In Ethredge v. Yawn, 605 So.2d 761, 764 (Miss.1992), the court defined abandonment as:
Any course of conduct on the part of a parent evincing a settled purpose to forgo all duties and relinquish all parental claims to the child. It may result from a single decision by a parent at a particular point in time. It may arise from a course of circumstances. The test is an objective one: whether under the totality of the circumstances, be they single or multiple, the natural parent has manifested his severance of all ties with the child.
(Citing Bryant v. Cameron, 473 So.2d 174, 178-79 (Miss.1985)). Here, the chancellor found:
[James] took no interest in the minor when she was born. Undisputed testimony reflects that the baby and Mother actually went home from the hospital with a man named Sylvester Crump. He is the father of Concetter’s daughter, Ka. When Concetter went into labor[,] Crump took her to the hospital. Further, [James] played no role in the birth, pregnancy or delivery of Sha. Additionally, and undisputed, [Pearlean] testified that [James] showed, at particular points in time, no interest in the child’s life and that it took three years before he actually got involved. [James] stated to the Guardian ad Litem (“GAL”), Attorney Debra M.'Giles, that he has always been in [Sha]’s life, but the facts do not support this assertion. Even now, the minor child reports that she considers Crump her dad and only calls [James] dad when she is in his presence. While balancing both the testimony and [James]’s statement to the GAL, the [e]ourt is convinced that at different stages of the child’s early years, [James] clearly abandoned [Sha] and for[sook] his parental responsibilities.
¶ 14. The evidence at trial established that James is involved in Sha’s life. He visits her at school and participates in activities, such as birthday parties. James attends parent-teacher conferences and talks with Sha’s teachers. James certainly takes an active role in Sha’s life. Hence, the chancellor’s finding that James has abandoned Sha is not supported by substantial evidence.
¶ 15. Next, we consider the chancellor’s finding that James’s conduct was so immoral that he was unfit to have custody. The chancellor found that James’s past and present relationships have negatively influenced his ability to properly parent Sha. The chancellor stated:
The point that the court is making in regards to [James]’s past and present relationships is that: (1) [James] consistently dates and marries wom[e]n much younger than him whom he relies on solely to cook, clean and care for him; [and] (2) [James] has consistently had overlapping relationships with these younger women.
¶ 16. The chancellor also addressed James’s current home environment. James’s wife, Annette Wilson, is the mother of three children. Two of these children have anger problems. At trial, Annette testified that the boys see a therapist because of their anger. The chancellor found that neither Annette nor James appreciates the seriousness of the boys’ anger and that they lack awareness of or concern for the potential danger Sha could be exposed to. Further, the chancellor found that because James and Annette have only been married one year, Sha and Annette share no “real bond.”
*1015 ¶ 17. The chancellor addressed the family dynamic prior to and after Concetter’s death. At one point, Annette and Concet-ter got into a physical altercation. Because Annette is a homemaker, Sha would have to rely on Annette solely for all of her needs while James is at work. Because of this, the chancellor found that if Sha lived with James, the situation could be detrimental to her.
¶ 18. The evidence clearly indicated that James has had multiple extramarital affairs. When James met Concetter, he was still married. James and Concetter lived together between 2005 and 2006. Sometime after 2006, James met another woman and married her, and they divorced in 2009. Prior to this divorce, James met and started to date Annette,
. ¶ 19. Although we have determined that the evidence did not support the finding that James had abandoned Sha, we find that there was sufficient evidence to support the chancellor’s finding that James’s conduct is so immoral -that he is unfit to have custody. See Smith, 97 So.3d at 46 (¶ 9). Accordingly, we find that the chancellor was correct to hold that the natural-parent presumption was rebutted.
II. Whether the chancellor erred in the Albright analysis.
¶ 20. Because we have found “one of these factors has been proven, then the presumption vanishes, and the court must go further to determine custody based on the best interests of the child through an on-the-record analysis of the Albright factors.” In re Dissolution of Marriage of Leverock & Hamby, 23 So.3d at 431 (¶ 24).
¶21. In child-custody cases, “the polestar consideration is in the best interest of the child.” Sellers v. Sellers, 638 So.2d 481, 485 (Miss.1994). In Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983), the court set forth the factors to be considered by the chancellor to determine child custody:
[A]ge of the child; health [ ] and sex of the child; a determinatiori of the parent that has had the continuity of care prior to the separation; which has the best parenting skills and which has the willingness and capacity to provide primary child care; the employment of the parent and responsibilities of that employment; physical and mental health and age of the parents; emotional ties of parent and child; moral fitness of parents; the home, school and community record of the child;. the preference of the child at the age sufficient to express a preference by law; stability of home environment and employment of each parent!;] and other factors relevant to the parent-child relationship.
¶ 22. Here, the chancellor conducted an Albright analysis. After considering each factor, the chancellor determined that it was in Sha’s best interest to remain in Pearlean’s primary physical custody. James argues that the chancellor erred in this analysis. He contends that the majority of the factors favor him rather than Pearlean. Pearlean failed to file a reply brief on appeal.
¶ 23. The chancellor found that the following factors favored Pearlean: age, health, and sex of the child; continuity of care prior to the separation; best parenting skills; emotional ties of parent and child; moral fitness of the parents; home, school, and community record of the child; and stability of the home environment. The chancellor found that the only factor that favored James was the “employment of the parent” factor. The chancellor found that the “physical and mental health and age of the parents” factor equally favored both parties. Also, while' the *1016 chancellor found that Sha’s preference was to live with Pearlean, we will not consider this factor because Sha was not of the legal age for her preference to be considered. See Miss.Code Ann. § 93-11-65 (Rev.2013).
¶ 24. The chancellor ihade several findings that influenced the decision. Sha had been in Concetter’s physical custody throughout her life'. Pearlean had'hélped Concetter support and raise Sha. Although James and Pearlean were willing to provide primary child care, Pearlean has the ability to devote her entire life and time to raisé Sha. Pearlean has significant ' parenting skills ' because she has raised other children, including Ka. Sha has a much closer bond with Pearlean than with James. Pearlean can provide an overall better quality of life and home environment for Sha. Sha told the guardian ad litem that she does not like going to visit James.
¶ 25. Our review of the record indicates that there was substantial evidence to support the chancellor’s analysis of the Al-bright factors. Our. role is to determine whether there was an evidentiary basis to support the chancellor’s findings. Having done so, we cannot find the chancellor erred in her Albright analysis. We affirm the chancellor’s judgment that awarded primary custody of Sha to Pearlean.
¶ 26. THE JUDGMENT OF THE CHANCERY COURT OF HINDS COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., ISHEE, CARLTON, MAXWELL AND FAIR, JJ., CONCUR. BARNES AND JAMES, JJ., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN ■ OPINION. ROBERTS, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY IRVING* P.J.

. Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983).